Chief Justice Robertson
delivered the Opinion of the Court;.
Elijah Warner, late of Lexington- in this State — owning a large estate in houses and lots in that city, and in slaves, choses in action, and other chattels — published a will, in January, 1828, whereby he gave to his only son, William Warner, twenty two thousand dollars in real estate and slaves, specifically described, and in money to be obtained from his chattels and choses in action-, and to his only daughter, Elmira Warner, thirty three thou *196 sand dollars, in the like specific articles of property, and ¡n money to be raised in the same mode; and then, after making several other bequests and devises to other persons, directed that, if, after satisfying all the devisees an¿ legatees, any surplus of his estate should still remain, it should be divided among all of them pari passu. Having afterwax’ds purchased a tract of land, and several houses and lots and slaves, he died in October, 1829, without having either revoked or republished his will.
Thomas Van Swearingen, who afterwards intermarried with Elmira Warner, claiming for his wife, as undevised, one moiety of the land and slaves thus acquired by the testator, subsequently to the publication of his will, and the executors resisting the claim, and ixxsisting that all the estate to which the testator was entitled at his death, passed by his will, they submitted an agreed case to the Judge of the Fayette Circuit Court, who decided that the slaves passed by the will, but that the land did not; and that, therefore, Mi’s. Sweax’ingen, as heiress, is entitled to one half of the land and lots purchased by her ancestor after publishing his will.
The executors, not being satisfied with that decree, have brought the case to this Court for revision.
Accoi’ding to the civil law of Rome, which divided all property into moveable and immoveable, a general testamentary disposition of a testatox’’s estate had the same constructive effect as to each class, and embraced all the pi'operty, immoveable as well as moveable, to which he was entitled at the time of his death; first — because he had the same right to dispose of his prospective acquisitions of each class of property; and secoxxdly — because a last will was considered as a designatioxx of an heir to succeed the testator, and, therefore, a genei’al heresfactus created by testament, was, to the extent of his testamentary right, deemed as much an heir as a heres natus, and of course, like the latter, was, by a general devise, total or residuary, entitled to property owned by the -testator at his death, although it may have been acquired after the date of his will.
As to personal property and testamentary dispositions of it, the common law adopted, to a very great extent, *197 the doctrines'of the Roman civil law respecting moveables, and the disposition of them by last will; because those doctrines were rational and matured, and generally consistent with the local policy and institutions of England, so far as personalty was concerned. And, as such property is peculiarly mutable, and a testamentary disposition of it would be often nugatory, or the testator’s purpose would frequently be frustrated if his will should be restricted to such articles only as he owned at the date of its publication; and as, moreover, according to the ancient common law, all of a testator’s chattels that did not pass by his will, went either to his executor, or to no person; therefore, the testamentary doctrines of the civil law were applied by the common law Judges to moveable property. And consequently, by a general bequest of such property, a testator will, according to the common, as well as the civil law, be understood as speaking at the time of his death, and not at the date of his will. And as slaves are perishable, and not only intrinsically personal, but legally as well as actually moveable, most of the reasons which apply to other moveables apply also to them, so far as there may be any question as to what shall be constructively embraced by a general bequest of slaves, or even by a more comprehensive one of the testator’s personal .estate. The statute of 1800 of this State, declaring that slaves shall pass like land by last will, does no.t, according to the established judicial construction of it, aifect this question, by determining either what slaves shall be embraced by a general devise of the testator’s slaves, or that .no slave shall pass by a general bequest of the testator’s personal estate. This Court has frequently decided that slaves will pass by a general bequest of personal estate, and in the case of Walton's Heirs vs. Walton's Executors, (7 J. J. Marshall, 58,) it was settled that a bequest of all the testator’s slaves, nothing else appearing, embraced all the slaves he owned at his death; and the case of Mason vs. Mason's Executors, (3 Bibb, 448,) clearly implies the recognition of the doctrine that a general devise of slaves will include all the slaves the testator shall own at his death.
The statute of 1800, which declares that slaves shall pass like land by last will, does not affect the construction of the will as to what slaves shall pass by it; but only prescribes the mode in which they shall pass. And it is well settled that, since the statute, slaves pass, as they did before [the statute, by a genera] devise of the testator’s per sonal estate; & that a general devise of slaves will include all the testator owned at the time of his death.
In England, a devise of lands applies only to the lands which the testator owned the will; he has there no power to devise those which he may wards Evenañ express devise of testator may acquire if is void. But this results from the peculiar phraseology oftbestatute of wills — -of the law has been respect^ in this State, by a Va. adopted hereby which a testator devisee property thathemay of his death,tho’ he had no title to it when the will was publish-to ’lands* will is here’ undering° atathePtkaé of its publicadhferenWntendon is expressly declared, or is plainly to be inferred from the will itself; and such an intention, will not be inferred from the mere fact that the testator makes a general disposition of his real estate.
*198 Prior to the statute of 1800, a will, as to slaves, was construed as speaking at the time of the testator’s death; an(j that statute, as has been determined, was not in-J tended to affect the construction as to what slaves should pass by will, but only prescribed the mode of passing such as the will should be construed as embracing or intending to pass.
But the same doctrine is not applicable in England, and does not necessarily apply here to land, or immoveable property.
The well established doctrine in England, is that, as ^anc^ or °ther real or immoveable estate, a testato1* speaks at the date of his will, and not at the time of his death;.and it is there undeniably settled that, even an express devise of all land which a testator may acquire ter tbe publication of his will, and own at his death, will be void; because, according to the British law, there is no such testamentary power over after-acquired real estate. Although it -is believed that the Anglo-Saxon ^aws permitted testamentary alienations of real as aS Persona,l estate, yet there can be no doubt that, since the introduction of the feudal system after the Norman conquest, no such power existed as to real . , . JL -vTTTT estate, prior to the statute of H. Vill. — excepting m a few privileged rdaces, where the more ancient local customs had never been abolished or supplanted by the new P°bcy of feudal tenure, and excepting also, certain beneficial interests which were devisable after the introduction of uses in England. ■ The statute of H. VIII. which gave a testamentary power over the legal title to kinds throughout all England, authorized all persons having such titles to lands held in free and common socage, to dispose of all such lands by last will, and all persons having such titles to lands held in chivalry, to ° , . . , „ , , V dispose of two thirds thereof by will, executed m a Presci'ibed mode. And when, in the reign of Ch. II., tenures in chivalry were abolished and converted into ^ose of common socage, the testamentary power resulted as to the whole of all lands of which a testator was seized ai the date 'of his will. But the statute of wills of H. VIII. applying only to, such land as a testator *199 owned when he published his "will, he still had no power to devise any land which he might afterwards acquire. And, a fortiori, when there is no express devise of after-acquired land, a will cannot, according to the laws of England'^ be construed as applying to any such subsequent title to land, because had there been an express devise of such subsequent interest, it would have been void.
But a statute of Virginia, (of 1787,) adopted in this State, has so far enlarged the testamentary power as to authorize a testator to devise land which he may happen to own at the time of his death, and to which he had no title at the time of making his will. And from this fact, the counsel for the appellants argue that, now, here, there is no reason for any difference in the constructive effect and application of a general devise of the testator’s land or estate, and those of a similar bequest of his personalty.
But in this deduction, they are opposed by the adjudged cases, and also, as we are inclined to think, by reason and analogy.
In Allen vs. Harrison and others (3 Call’s Rep. 264,) the Judges of the Court of Appeals of Virginia decided, unanimously and seriatim, that, notwithstanding the Virginia statute of 1787, to which we have just alluded, a will should not, as to land, be considered as speaking at any other time than that of its publication — unless the contrary shall have been expressly declared by the will itself, or should, according to a proper interpretation of its language and provisions, be inferred to have been his actual intention; and that no such inference will be authorized by the simple fact that, by his will, he makes a general disposition of his land or of his estate, which, in the judgment of that Court, should — as to land, respecting which his actual intention at the date of his will should alone prevail — be restricted to that which he then owned, and not extended to whatever he might, in years afterwards, happen to acquire. The same doctrine, frequently reiterated by the same Court, has been also recognized by the Supreme Court of the United States, in the case of Smith and others vs. Edrington, 8 Cranch, 66, and 3 Cond. Rep. 35.
*200 If the natural import of a general devise of one’s estate should be, that the testator, in making such a post-mortuary arrangement, contemplated whatever property mjght happen to own at his death, and not merely that which belonged to him at the date of his will, and if, also, the only reason for deciding in England, that a general devise of land speaks only at the time of its publication, had been that the sfatute of H. VIII. authorized a devise of only such land as the testator had at the time of making his will, we should be willing to admit that, here, now, a will making a general disposition of the testator’s property should be construed as embracing all that he should own at his death, as well real as personal, immoveable as moveable. But neither of these hypothetical concessions can be made consistently with established facts and authorities.
The doctrine that a general bequest of personalty shall speak at the testator’s death, was established for the reasons we have already suggested, and not because such was presumed to have been, in fact, his' intention, Masters vs. Masters, (1 Pr. Wms. 424;) Wind vs. Jekyl and Albone, (Ib. 475.) According to the Roman law, a testamentary disposition of property, whether it was a legaturn or a fidei-commissum, was considered as the institution of an heir, (Cowp. 90; Roberts on Frauds, 296;) and consequently, the person so appointed the testator’s successor, by a general disposition of his estate, was entitled to all he left at his death. But it has ever been the doctrine in England, that a devise of a freehold interest in land, is a mode of “conveyance by way of appointment;” and therefore, prior to, aná independently of, the statute of H. VIII., a testator — having a testamentary power over an use, or, according to a local custom, over a legal title to land in fee — could not, by his will, pass any interest in land acquired by himself after the publication of his will. Duppa vs. Mayo, 1 Saunders' Rep. 277, n. 4; Dyer, 143; Arthur vs. Bockenham, 11 Mod. 158-9; Jackson vs. Potter, 11 Johnson, 312; Cowp. (supra,) and Ram on Wills, 4.
And to show that, had a testator possessed a legal right in England, as here, to devise land to which he might *201 acquire title after the publication of his will, a general devise of all his lands, nothing else appearing, would not have been construed, like a similar bequest of moveables, as applying to after-acquired land, we need only to refer to the case of James vs. Dean, 11 Ves. 383, and 15th Ib. 236 — in which Lord Eldon said that, in order to give such an effect to a general bequest of a chattel interest in land, a prospective right to which may be bequeathed in England, “You must show that' intention.,5 This fortifies some of the foregoing suggestions tending to prove that, as a matter of fact, the prima facie pre-1 sumption arising from a general disposition of estate by a last will, without any other auxiliary circumstance, is that the testator contemplated, and, in fact, intended to dispose of only such property- as he owned when he published his will; and it tends also strongly, if not conclusively, to show that the transient character of moveables, and the fact that, if the whole of such property owned at the testator’s death should not pass by a general bequest, it might anciently have gone either to the executor, or to no one, induced, in respect to such property, the adoption, into the common law, of the testamentary, doctrine of the civil law, even though the intention of testators may thereby often, perhaps generally, be frustrated, in a greater or less degree; and lastly, it shows that this civil law rule of making the testator speak at his death, and not at the date of his will, not only was never applied to immovable property, but never would have been applied to land or any interest therein, even had a prospective freehold, as well as leasehold, interest therein been always devisable in England; for it seems not to have been applied to general bequests of chattel interests in land, even though a testator might always, in England, have effectually bequeathed such interests afterwards to be acquired by him. And the principal reasons of this exception from the rule of the civil law, are, (1) that such an arbitrary rule of legal construction frequently operates inconsistently with a testator’s intentions; and (2) that, as even a chattel interest in land is not,so mutable or.fugitive, either in itself or in the proprietorship of it, as that kind *202 pr0perty which is perishable and, in fact, moveable— neither policy nor convenience required that a general bequest of it should be construed as speaking at the. testator’s death, when, in most cases, he intended to speak ,onjy wben he published his will.
A testator, who died some time after the making of the will, by which he evidently disposed of all the property that he then had, directed that, if there should 'be any surplus after paying the legacies,itshould be divided among the legatees in proportion to the sums allotted to them; and further, that, in case the estate should prove insufficient for all the legacies, each legatee should have a proportionate share: held that, it cannot he inferred fromthese expressions, that the testator intended to devise any land which he might acquire after the publication of the. will; and there being nothing else in the will indicative of such intention; the after-acquired lands do not pass by it.
*202 We, therefore, incline to the conclusion, that, in this State, the doctrine of reason as well as of authority— as to a general devise of lands — is like that of England ■respecting the like testamentary dispositions of leasehold interests in land: that is, that, prima facie, the tes•tator contemplated only such interests as he owned when he published his will. But if he manifest an intention to devise whatever interests he may own at his death, then, and only then, his will should be understood as speaking at his death, as to land as well as any other property; because then, and only thep, such appears in fact to have been his will, and here he has a legal right to effectuate such a will.
: Such an intention will not be presumed, but must be disclosed by the actual import of the provisions, els made in the will.
The only remaining question is, whether Warner’s will manifests an intention to dispose of all the property he should happen to own, of every kind, whenever he should happen to die, however remote tftat period might have been from the date of his will.
It is sufficiently evident that the testator expressly disposed of all the estate he owned at the time of publishing his will; and we infer that he devised, specifically, all the real estate he then owned; but he did not manifest an intention to devise after-acquired land, unless such an intention should be deduced from the following provisions: — “I further will and direct, that the 41 residue of my estate, if there should be any surplus re- “ maining after paying the above mentioned legacies, be “ divided among the above named persons, in proportion “ to the sums allotted to each above.
44 t{ 44 “1 further will and provide that, in case my estate does not extend to all the legatees first above named, then each are to have a share thereof in the same proportion to each already named.”
A general charge on land devised by will, or on the testator’s estate— nothing else appearing— does not extend to land which he did not own at the date of the will.
But those declarations, when properly considered, either alone or in' connexion with other and antecedent provisions, do not, in our opinion, evince any reference to land subsequently acquired.
The residuary clause cannot be deemed as referring to after-acquired land, unless it imply á charge on such land for payment of legacies. But,' if it imply a charge on any .land, that charge, like any other provision, must be restricted to such land as the testator owned when he published his Will, unless a more comprehensive intention be indicated by the whole tenor of the residuary clause, or that of some other clause; for it is, we think, well settled by adjudged cases, that a general charge on land, or on the testator’s estate, nothing else appearing, should not be constructively extended to land which he did not own at the date of his will; and any other doctrine would be inconsistent with the rule that a general devise of land or of estate does not, per se, include land acquired after publication. Nor, for the same reason, is there any other provision which should be construed as importing a charge on after-acquired land for payment of debts or legacies. Most of the legacies were, according to the provisions of the will, to be paid out of the personal estate; as to some others, no express provision was made as to the means of payment, excepting that they were to be paid “out of (the testator’s) estate.” And if this should be understood as referring, to land, which the whole tenor of the will inclines us to doubt, nevertheless, it does not embrace land not owned by the testator when he published his will. And he made no provision for debts, because he declared that he owed' none. , _
The other provision which we quoted from the will, cannot receive a more enlarged interpretation or effect than that which we have given to the residuary clause.
But if the true construction of the provisions which we have been considering, should be deemed doubtful, that which we have just given to them is fortified, if not made conclusive, by at least two considerations; first— in the preamble of his will the testator announced his intention to dispose of the estate he then owned, by de *204 daring as follows: — “as respects the estate which it hath pleased God to bless me with;” and, second — it is almost certain he devised specifically all the real estate he then owned, and, of course, we should not presume that, in speaking of the payment of legacies out of his estate, and in devising the residue of his estate, he contemplated any land whatever — especially as he seems to have hád a large personal estate, not otherwise disposed of than by the dedication of it to the payment of legacies.; and to which alone, therefore, he seems to have referred in his residuary provision.
We cannot, therefore, feel authorized to decide that the will manifests an intention to dispose of real estate acquired by the testator after publication. „
Wherefore — the opinion of this Court concurring with that of the Circuit Court — the decree must be affirmed.